[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10144
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cv-00959-MHT-PWG

WINDHAM TODD PITTMAN,

Plaintiff - Appellant,

versus

STATE FARM FIRE & CASUALTY COMPANY,
PAT CRAIG,
TERESA SPENCE,
EUGENE CAMPBELL,
BERT SHEFFIELD NETTLES, et al.,

Defendants – Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(December 5, 2016)

Before JORDAN, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Windham Todd Pittman filed a lawsuit against State Farm Fire and Casualty Insurance Company ("State Farm"), Pat Craig, Teresa Spence, Eugene Campbell, and others alleging, among other claims, violations of his civil rights under 28 U.S.C. § 1983.  Pittman's claims arise out of the aftermath of an alleged robbery at his home.  Following the alleged robbery, Pittman filed an insurance claim with his insurer, State Farm.  After performing an investigation into the claim, State Farm concluded that Pittman's claim was fraudulent and denied the claim.  Criminal charges were filed against Pittman.  Generally, Pittman claimed that the defendants entered into a conspiracy to pursue criminal charges against him after he filed his insurance claim, overlooking evidence that he was not involved in the burglary.

Pittman ultimately brought four claims against State Farm, Craig, Spence, and Campbell in an Amended Complaint containing over three-hundred numbered paragraphs.  As relevant to this appeal, Count One alleged a violation of Pittman's Fourth Amendment rights pursuant to 28 U.S.C. § 1983, and Count Two alleged a violation of Pittman's Fifth Amendment rights.  In Counts Three and Four, Pittman brought state-law claims for malicious prosecution and defamation.  On motions to dismiss, the district court dismissed with prejudice the federal civil-rights claims set forth in Counts One and Two.  The district court also dismissed without

2

prejudice the state-court claims, allowing Pittman to re-file these claims in state court.

After careful consideration, we affirm the district court's order dismissing the Amended Complaint.

## I.

On July 4, 2010, Pittman and his family returned from vacation and found that their home had been burglarized. Pittman reported the incident to the police and to State Farm, the company that insured Pittman's home and its contents. More than seventy pieces of art, various pieces of expensive jewelry, guns, and a computer had been taken from the Pittman home. Pittman reported the value of the missing items to be approximately $500,000.

State Farm found the insurance claim to be suspicious and assigned Craig, an investigator with its Special Investigations Unit, to review the claim.[1]   After conducting an investigation, on April 11, 2011, State Farm concluded that Pittman was involved in the alleged burglary and had fraudulently reported the items as stolen, so it denied his claim.

Pittman sued State Farm for bad faith and breach of contract shortly before State Farm denied his claim. The district court resolved the case in favor of State

---

[1]State Farm noted that Pittman's company was in the middle of a Chapter 11 bankruptcy, Pittman had been sued on the individual guarantee of certain debts of the company for more than $700,000, and Pittman had only recently increased his homeowner's insurance coverage before going on vacation.

3

Farm, *Pittman v. State Farm Fire & Cas. Co.*, 868 F. Supp. 2d 1335 (M.D. Ala. 2012), and, on appeal, this Court upheld the decision of the district court. *See Pittman v. State Farm Fire & Cas. Co.,* 519 F. App'x 656 (11th Cir. 2013).

At some point during State Farm's investigation of the insurance claim, Craig met with Pittman's former mistress, Defendant Teresa Spence.[2] At one of their meetings, Spence told Craig that "she had come into possession" of some of the items missing from Pittman's home. Craig is alleged to have recorded the meeting with Spence, but he did not produce the recording in the course of Pittman's prior litigation against State Farm. The Amended Complaint asserts that, following the meeting between Craig and Spence, State Farm agreed not to prosecute Spence if she agreed to blame the burglary on Pittman and to cooperate in State Farm's prosecution of Pittman.

Pittman further contends that State Farm and Craig introduced Spence to Defendant Eugene Campbell, a deputy with the Geneva County, Alabama, Sheriff's Office, despite knowing of her involvement with the burglary.[3] In the meantime, Spence allegedly told Pittman's current girlfriend, Heather Ledbetter, that Pittman's lost artwork was about to be located by police in a storage unit in

---

[2] According to the Amended Complaint, Spence framed Pittman for the burglary because he had terminated their long-term relationship. Spence claims that she was not involved in the burglary and contends that Pittman named her as a defendant in the lawsuit as revenge for disclosing to State Farm her knowledge of Pittman's involvement in the alleged burglary.

[3] Pittman claims that, at some point, Spence and Campbell began a personal relationship.

Brantley, Alabama. Following the conversation, Heather[4] called her father, Ronnie Ledbetter, to relay the information provided by Spence. Heather asked her father to contact State Farm, so the company could recover the property. Ronnie subsequently went to a State Farm office and, as a result, Craig later met him and encouraged him to speak with Deputy Campbell, which Ronnie did.

After speaking with Spence and Ronnie, Campbell executed an affidavit in support of a search warrant for a storage unit in Brantley.[5] Pittman asserts that generating false probable cause for the search warrant was Spence's aim when she spoke with Campbell and Heather. As a result of the execution of the search warrant, many of the items reported stolen by Pittman were found in the storage unit. Additional items belonging to Pittman were found in the storage unit, along with the items listed as missing in the insurance claim.

Following the search of the storage unit, Pittman was arrested and indicted for attempted theft of property in the first degree. Throughout the criminal case and the investigation leading up to it, the facts of Pittman's alleged involvement were publicized over the radio, television broadcasts, on the internet, and in print media.

---

[4] We refer to the Ledbetters by their first names to avoid confusion.

[5] The storage unit was registered under an alias, and the payment of rent and submission of the registration took place through a drop box so that the owners of the unit were unable to verify the identity of the person who rented the unit.

5

The criminal case against Pittman ended in a dismissal. The charges were ultimately dropped after Pittman entered into an agreement with the prosecutor and agreed to pay court costs.

Pittman filed the underlying lawsuit alleging a violation of his civil rights, malicious prosecution, and defamation.  Throughout the Amended Complaint, Pittman alleges that Spence admitted to being in possession of Pittman's stolen property after the burglary and that Campbell, Craig, and State Farm were aware of this information.

Finding that Pittman failed to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the district court dismissed the Section 1983 claims with prejudice and the state claims without prejudice to re-file in state court.  We agree and affirm.

## II.

We review *de novo* a district court's dismissal of a complaint for failure to state a claim under Rule 12(b)(6), "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff."  *Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010)). We need not accept as true allegations in a complaint that are merely legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 678, 663, 129 S. Ct. 1937, 1949 (2009). Plaintiffs must provide the grounds for entitlement to relief; mere "labels and

conclusions," or a "formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1974 (2007).  To survive a motion to dismiss, plaintiffs must allege sufficient facts to push their "claims across the line from conceivable to plausible."  *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).[6]

## III.

After careful review of the 304 paragraphs of allegations against the defendants, we conclude that the district court properly dismissed the Amended Complaint.

### A.  Shotgun Pleading

To begin with, Pittman's Amended Complaint constitutes a classic "shotgun pleading" because each count reincorporates by reference all preceding paragraphs of the Amended Complaint.  We have "roundly, repeatedly, and consistently condemn[ed]" shotgun pleadings.  *See  Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 979 (11th Cir. 2008).  A complaint is a shotgun pleading when it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."  *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).  A pleading drafted in this manner "is in

---

[6] Although Pittman devotes approximately eight pagers of his Initial Brief to urging us to take positions inconsistent with the holdings of both *Iqbal* and *Twombly*, we decline.  We must adhere to these cases, as they are binding Supreme Court precedent.

no sense the 'short and plain statement of the claim' required by Rule 8[(a)(2), Fed. R. Civ. P.]," and "completely disregards Rule 10(b)'s requirement that discrete claims should be plead in separate counts." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (per curiam).

Here, Pittman presented 262 paragraphs containing general allegations in his Amended Complaint.  He then set forth four counts against the defendants.  In each count, however, Pittman realleged "all prior paragraphs as if set out here in full." The Amended Complaint is a quintessential shotgun pleading since it "incorporate[s] every antecedent allegation by reference into each subsequent claim for relief or affirmative defense." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) (citing *Magluta*, 256 F.3d at 1284)).  But even overlooking that problem, the district court did not err in granting the defendants' motions to dismiss.

### B.  Waiver

While the Amended Complaint contains two state claims—claims for malicious prosecution and defamation—those claims are not at issue in this appeal. As is clear by now, "a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).  An issue is likewise considered abandoned when "a party seeking to raise a claim or issue on appeal

[fails to] plainly and prominently so indicate." *United States v. Jernigan*, 341 F.3d 1273, 1284 n. 8 (11th Cir. 2003).

Pittman has not raised as error the district court's dismissal of the state-court claims, so we do not address them. As the district court noted, Counts Three and Four of the Amended Complaint—the state-court claims—were "dismissed without prejudice, and with leave to refile in state court." Accordingly, Pittman is free to refile his malicious-prosecution and defamation claims in state court.

## C.  Pittman's Civil  Rights Claims

The two counts at the center of this appeal are Counts One and Two of the Amended Complaint—Pittman's civil-rights claims brought pursuant to Section 1983.[7] We address each in turn.

### 1.  Count One

In Count One, Pittman attempts to set forth a conspiracy claim against the defendants under the Fourth Amendment to the Constitution. Pittman alleges that Deputy Campbell "used fabricated probable cause to obtain a search warrant for the Brantley storage Unit where the stolen artwork was recovered." The Amended Complaint continues, asserting that Deputy Campbell bolstered the probable cause affidavit with false statements attributed to other defendants. Next, Pittman alleges

---

[7] Pittman's Initial Brief makes clear that only the first two counts of the Amended Complaint—those alleging violations of the Fourth and Fifth Amendments—are intended to allege federal claims for an alleged violation of his civil rights under § 1983.

9

that Deputy Campbell "used this falsified probable cause to obtain the search warrant for the storage unit in Brantley, Alabama where he unsurprisingly located the stolen items placed there by Spence or someone working on her behalf and at her direction to frame Pittman."  Pittman concluded, "[t]hese acts violate the 4th Amendment's protections against obtaining search warrants illegally."

All of the allegations supporting the Fourth Amendment claim appear to relate to an alleged improper search and seizure of items in the storage unit.  But conspicuously absent from the Amended Complaint is any allegation that Pittman owned the storage unit or had any expectation of privacy with respect to the unit. To the contrary, the facts as pled by Pittman imply that the storage unit did *not* belong to him and, instead, belonged to Spence, the person who allegedly stole the artwork from his home.  And, as a practical matter, Pittman could not allege an ownership interest in the storage unit since such a fact would implicate him in the burglary.

Pittman's lack of ownership or other interest in the storage unit is fatal to his Fourth Amendment claim.  As the Supreme Court has stated, "in order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S. Ct. 469, 472 (1998) (quoting *Rakas v. Illinois*, 439 U.S. 128, 140 99 S. Ct. 421 (1978)).

Although lack of ownership of the place searched is not dispositive, the person alleging a Fourth Amendment violation must have some relationship with the place searched in order to assert an expectation of privacy. *See Carter*, 119 S. Ct. at 474; *United States v. Segura-Baltazar*, 448 F.3d 1281, 1285 (11th Cir. 2006) (Fourth Amendment claim requires an invasion of the plaintiff's reasonable expectation of privacy).

Here, Pittman failed to allege any privacy interest in the storage unit or any connection at all to the unit. Pittman's failure to allege any privacy interest in the storage unit is fatal to his claim. Accordingly, the district court did not err when it dismissed Count One of the Amended Complaint. And, while the district court did not dismiss Count One on these grounds, we may affirm a judgment based on any grounds supported by the record. *Akanthos Capital Mgmt., LLC v. Atlanticus Holdings Corp.*, 734 F.3d 1269, 1271 (11th Cir. 2013) (per curiam) (citation omitted).

To the extent Count One may be construed to include a claim for unlawful arrest and detention, dismissal of the claim is likewise warranted. First, Pittman waived any argument that State Farm conspired with the other defendants to violate his Fourth Amendment rights because he failed to challenge the district court's dismissal in this regard. *See Access Now*, 385 F.3d at 1330. On appeal, Pittman focuses on the individual private actors' roles in the alleged conspiracy

11

and fails to discuss the separate standard applicable to corporations facing § 1983 claims. To the extent Pittman's claim against State Farm was not waived, we find the district court's dismissal of the claim to be appropriate. A private corporation "may be liable under § 1983 if it is established that the constitutional violation was the result of the corporation's policy or custom." *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992). The Amended Complaint is devoid of any allegations that State Farm had a "policy or custom" to deprive its policyholders of their constitutional rights. Thus, dismissal with prejudice with respect to State Farm was warranted.

Pittman's Fourth Amendment conspiracy claims against the private individuals fare no better. In order to establish a Section 1983 claim, Pittman must show that he "was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). "[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S. Ct. 977, 985 (1999) (citations omitted).

We have held, in order to find private parties to be state actors, one of three tests must be met: (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("the state compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive

prerogative of the State ("public function test"); or (3) "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise[]" ("nexus/joint action test"). *Hogue*, 241 F.3d at 1347 (citing *NBC, Inc. v. Communications Workers of America,* 860 F.2d 1022, 1026–27 (11th Cir.1988)); *see also Focus on the Family v. Pinellas Suncoast Transit Auth*., 344 F.3d 1263, 1277 (11th Cir. 2003). Because Pittman alleged a conspiracy between the defendants, the nexus/joint action test is most applicable.

A conspiracy to violate another person's constitutional rights violates Section 1983. *Rowe v City of Ft. Lauderdale*, 279 F.3d 1271 (11th Cir. 2002) (citations omitted). "[T]he acts of a private party are fairly attributable to the state on certain occasions when the private party acted in concert with state actors." *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) (citation omitted). In order to establish a § 1983 conspiracy, a plaintiff must show that the defendants "reached an understanding to violate [his] rights." *Id*. at 1283 (citation omitted). While a plaintiff need not come forward with a "smoking gun" to show an understanding, he must "show some evidence of agreement between the defendants" and willful participation. *Id.* (citation omitted) "The linchpin for conspiracy is agreement, which presupposes communication." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 D.2d 1112, 1122 (11th Cir. 1992).

13

A showing of conspiracy requires more than conclusory allegations and a "mere scintilla of evidence." *Rowe*, 279 F.3d at 1283-84 (citing *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).  A plaintiff bringing a conspiracy claim must inform the defendants of the nature of the conspiracy alleged.  *Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir. 1984) (citation omitted).  It is not enough to aver in the complaint that a conspiracy existed.  *Id.*  "A plaintiff claiming a conspiracy under § 1983 must make particularized allegations that a conspiracy exists."  *See GJR Investments, Inc. v. County of Escambia,* 132 F.3d 1359, 1370 (11th Cir. 1998).  Vague and conclusory allegations that merely suggest a § 1983 conspiracy are insufficient to withstand a motion to dismiss.  *Fullman,* 739 F.2d at 556-57.  The claims must include enough factual allegations to "raise a right to relief above the speculative level."  *See Twombly*, 550 U.S. at 554.

In order to state a § 1983 claim against Craig and Spence, Pittman must demonstrate more than an agreement between these two private individuals.  He must show that they conspired with the only state actor in this case, Deputy Campbell, to violate Pittman's constitutional rights.  But even taking Pittman's allegations as true, the Amended Complaint fails to allege such a plausible agreement.  True, the Amended Complaint asserts that Craig met with Spence, and he agreed not to prosecute Spence if she blamed Pittman for the burglary of his

14

home. This agreement allegedly came to fruition after Spence told Craig she was in possession of some of Pittman's belongings. While these allegations may establish an agreement between Craig and Spence, an agreement between private actors is not enough.

The Amended Complaint also alleges that "State Farm, its lawyers, and Craig began working with the active assistance of Spence to criminally prosecute" Pittman and that Craig introduced Spence to Deputy Campbell. Again, these allegations do not establish an *agreement* between the private actors and Deputy Campbell. Merely "introducing" Spence to Deputy Campbell is insufficient to establish a conspiracy to violate Pittman's constitutional rights.

Similarly, although Pittman alleges that Spence was "involved with Campbell" and that "she was using Campbell" in order to obtain Pittman's property, these allegations do not rise to the level of an actionable claim because they fail to set forth any agreement between Spence and Deputy Campbell. The allegations tend to suggest that Spence used Deputy Campbell as an unsuspecting pawn to investigate Pittman, but they do not establish an agreement between the two defendants.

Pittman points primarily to paragraph 256 of his Amended Complaint to support his conspiracy claim. In that paragraph, Pittman alleges three alternative theories of conspiracy as follows:

15

> Either State Farm, its lawyers and Craig agreed with Spence not to disclose the fact of Spence's involvement in the crime to Campbell and other law enforcement to gain law enforcement's help in prosecuting Pittman or; Spence and Campbell did not disclose to State Farm, its lawyers and Craig that they were aware of Spence's involvement in the crime; or all the defendants understood Spence's involvement in the crime and agreed to prosecute Pittman for the crime anyway.

Pittman concedes that under the first scenario, his claim for conspiracy would fail because any alleged agreement did not involve a state actor. With respect to the second scenario, Pittman admits on appeal that the sentence is poorly worded.[8] The scenario also does not establish any agreement between Craig and Campbell. Finally, while the third scenario potentially sets forth an agreement between the parties, its stated conspiracy theory—based on complete speculation, as demonstrated by the fact that it is alleged in the alternative to the other two hypotheses, where one of the other theories concedes that Deputy Campbell had no knowledge of Spence's alleged involvement in the crime—is the type of conclusory allegation that cannot satisfy the pleading standard set forth in Rule 8, *Twombly* and *Iqbal.* In short, Pittman did not adequately plead any clear agreement between the private defendants and a state actor above the speculative level.

---

[8] Pittman also concedes that he did not expressly allege that Deputy Campbell knew Spence had information related to the location of the stolen property.

16

Finally, while Deputy Campbell is a state actor who may be held liable under § 1983 absent a conspiracy with the other defendants, we find that the district court properly dismissed Count One against Deputy Campbell. In essence, Pittman contends that Deputy Campbell fabricated the evidence used to support the search and arrest warrants. Where a plaintiff challenges the constitutionality of a seizure based on an allegedly false affidavit supporting a warrant, the plaintiff must show that the officer deliberately or with reckless disregard for the truth made material false statements or omitted material facts. *Franks v. Delaware*, 438 U.S. 154, 155, 98 S. Ct. 2674, 2676 (1978). The allegations in the Amended Complaint fall short of demonstrating that Deputy Campbell fabricated evidence in the warrants or that he had knowledge that what he presented in his affidavit was false. Significantly, Pittman sets forth no allegations in the Amended Complaint of precisely which facts in Deputy Campbell's affidavit were allegedly false or fabricated.

Pittman concedes that Deputy Campbell's affidavit was based on information he received from Ronnie Ledbetter and one of State Farm's attorneys. Pittman alleges that Spence was the original source of the information in the search warrant that led to the discovery of Pittman's items in the storage unit, which then led to his arrest. In other words, Pittman implies that Spence baited Heather and Ronnie Ledbetter to provide information to police. But Pittman fails to allege that

Deputy Campbell had knowledge that the information he received from the Ledbetters was false. Indeed, the Amended Complaint does not assert that Campbell knew that Ronnie (or Heather) Ledbetter's information came from Spence. Under these circumstances, the § 1983 claim against Deputy Campbell necessarily fails. *See Dahl v. Holley*, 312 F.3d 1228, 1235 (11th Cir. 2002) (granting qualified immunity to officer where he accurately relayed information obtained from an informant and "there [was] nothing to suggest that he knew this information [was] inaccurate.")

### 2. Count Two

In Count Two, Pittman attempts to set forth a conspiracy claim against the defendants under the Fifth Amendment to the Constitution. The Fifth Amendment, which protects individuals from being "deprived of life, liberty, or property, without due process of law," U.S. Const. amend. V, applies to only federal, not state, actors. *Knoetze v. U.S. Dep't of State,* 634 F.2d 207, 211 (5th Cir. Jan. 12, 1981) (Fifth Amendment protection extends to all persons within the United States but attaches only when the federal government seeks to deny a liberty or property interest).[9] Pittman alleges neither that any of the defendants are federal actors nor that the federal government in any way denied him a liberty or property interest.

---

[9] The Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit prior to October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981).

18

Furthermore, Pittman offers no explanation of why the Fifth Amendment should apply to the named defendants.

To the contrary, Pittman argues only that Section 1983 liability applies since Campbell was employed as a police officer by a state law-enforcement agency. In this regard, Pittman discusses the private defendants' alleged connection with Campbell, an agent of the *state*. And, he asserts, based on the private defendants' participation with Campbell, the defendants were acting under "color of state law" for § 1983 purposes. Because Pittman failed to allege any deprivation of liberty or property by a *federal* actor, the district court correctly dismissed Count Two with prejudice.[10]

### D. Amendment of the Amended Complaint

Finally, while we recognize that under certain circumstances plaintiffs should be permitted an opportunity to amend their complaint, those circumstances do not exist here. In the district court, Pittman never made a motion to amend his complaint, nor did he ever suggest how he could cure the pleading deficiencies in a subsequent complaint. At most, in responding to the defendants' motions to dismiss, Pittman merely suggested that re-pleading *might* be required. Even if

---

[10] While Pittman could have perhaps brought a claim for an alleged violation of his Fourteenth Amendment rights, he did not set forth such a claim in his Amended Complaint. *See e.g., Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931–32, 102 S. Ct. 2744, 2750–51 (1982) (private party's joint participation with a state official in a conspiracy could meet state action required to show a violation of Fourteenth Amendment rights). And, as discussed more fully *infra*, because Pittman never sought to amend his complaint to assert such a claim, the district court properly dismissed Count Two with prejudice.

19

these statements could be construed as requests to amend the complaint, Pittman failed to set forth how he would amend his complaint.

In *Atkins v. McInteer*, we explained that if a plaintiff wishes to amend his complaint, he "must either attach a copy of the proposed amendment to the motion or set forth the substance thereof." 470 F.3d 1350, 1362 (11th Cir. 2006); *see also Urquilla–Diaz v. Kaplan Univ.,* 780 F.3d 1039, 1057 n. 14 (11th Cir. 2015) ("Diaz never made a motion to amend his complaint, nor did he ever suggest how he could cure his defective complaint in a subsequent pleading. Under our precedent, the district court's decision [to dismiss] was not an abuse of discretion."). And our precedent makes clear that merely mentioning the possibility of amendment is not tantamount to a request for leave to amend. *See Lord Abbett Mun. Income Fund, Inc. v. Tyson,* 671 F.3d 1203, 1208 (11th Cir. 2012) (per curiam) ("The Fund's request for leave to amend appeared in its response to the Defendant's motion to dismiss. The Fund failed, however, to attach a copy of this proposed amendment or set forth its substance. Therefore, the district court did not err by denying the Fund's request.").

Because Pittman never filed a motion for leave to amend his complaint and never presented the district court with a proposed amended complaint curing the pleading deficiencies, the district court did not err in dismissing Counts One and Two with prejudice.

20

## IV.

For the foregoing reasons, we affirm the district court's dismissal of Counts One and Two of the Amended Complaint.  Although Pittman may not proceed on his Section 1983 claims, he may re-file his state-court claims for malicious prosecution and defamation claims in state court.

**AFFIRMED.**