RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0136p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JERMAINE KIMBROUGH,

*Defendant-Appellant*.

No. 23-5529

───────────────

Appeal from the United States District Court for the Western District of Tennessee at Memphis.
No. 2:22-cr-20206-1—Thomas L. Parker, District Judge.

Decided and Filed:  May 21, 2025

Before:  GILMAN, READLER, and BLOOMEKATZ, Circuit Judges.

───────────────

**COUNSEL**

**ON BRIEF:**  J. Everett Hoagland, FEDERAL PUBLIC DEFENDER'S OFFICE, Memphis, Tennessee, for Appellant.  Karen Hartridge, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

GILMAN, J., delivered the opinion of the court in which BLOOMEKATZ, J., concurred. READLER, J. (pp. 10–22), delivered a separate opinion concurring in part and dissenting in part.

───────────────

**OPINION**

───────────────

RONALD LEE GILMAN, Circuit Judge.  Jermaine Kimbrough pleaded guilty in 2022 to four criminal offenses that involved carjacking and firearms.  At sentencing, the district court determined that Kimbrough had committed three prior violent felonies "on occasions different

from one another," which made him subject to an enhanced sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1).

The Supreme Court subsequently held in *Erlinger v. United States*, 602 U.S. 821, 835 (2024), that error occurs when a judge, instead of a jury, makes the "occasions" decision. We review that decision to determine if the error was harmless. *See United States v. Campbell*, 122 F.4th 624, 629–31 (6th Cir. 2024). Because the error was not harmless in the present case, we **VACATE** Kimbrough's sentence on Counts One, Two, and Four and **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

Kimbrough pleaded guilty to the following offenses: (1) conspiracy to commit carjacking (Count One), in violation of 18 U.S.C. § 371; (2) carjacking (Count Two), in violation of 18 U.S.C. § 2119(1); (3) using, carrying, and brandishing a firearm during and in relation to a crime of violence (Count Three), in violation of 18 U.S.C. § 924(c); and (4) being a felon in possession of a firearm (Count Four), in violation of 18 U.S.C. § 922(g)(1). Kimbrough committed all of these offenses in July 2021. The offense of being a felon in possession of a firearm carried a maximum penalty of 10 years' imprisonment at that time. 18 U.S.C. § 924(a)(2) (2018). But under the ACCA, a defendant convicted of a felon-in-possession offense under 18 U.S.C. § 922(g) who "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another," is subject to a minimum sentence of 15 years' imprisonment. 18 U.S.C. § 924(e)(1). An ACCA designation would therefore increase Kimbrough's statutory penalty range for Count Four from a maximum of 10 years to a minimum of 15 years.

The Presentence Report (PSR) recommended treating Kimbrough as an armed career criminal under the ACCA. Kimbrough's allegedly qualifying convictions were three Tennessee convictions for aggravated burglary, one in 2012 and two in 2016. The two 2016 convictions are the focus of this appeal.

During sentencing proceedings, Kimbrough objected to his designation as an armed career criminal. He argued that, pursuant to *Wooden v. United States*, 595 U.S. 360 (2022), a

jury should make the determination of whether his two 2016 aggravated-burglary offenses occurred on the same "occasion." Kimbrough further argued that the government would be unable to establish that the occasions were different. Even so, the district court held that it, instead of a jury, would make that determination based on then-controlling Sixth Circuit precedent. The court subsequently ruled that the two 2016 burglaries took place on different occasions, thereby overruling Kimbrough's objection to the application of the ACCA enhancement.

In the PSR, for Guidelines-calculation purposes, Counts One, Two, and Four were grouped together. The district court also grouped these counts for sentencing purposes. According to the PSR, the Guidelines range for this group of counts was 180–188 months of imprisonment. The court then granted Kimbrough a downward sentencing departure on these three counts to 148 months, to be served concurrently. An addendum to the PSR explained that, without the ACCA enhancement, the Guidelines range for this group of counts would have been 84–105 months. Finally, the court sentenced Kimbrough to 84 months on Count Three, to be served consecutively to the 148 months on the other three counts.

Kimbrough timely appealed his sentence. We held his appeal in abeyance pending the Supreme Court's decision in *Erlinger*. After the *Erlinger* decision was issued, the parties filed supplemental briefing on the "occasions" issue.

## II.  ANALYSIS

### A.      Standard of review

The ACCA's "occasions" clause asks whether the defendant "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). In *Wooden*, the Supreme Court explained that the occasions inquiry is "multi-factored" in nature, and that "a range of circumstances may be relevant to identifying episodes of criminal activity." *Wooden*, 595 U.S. at 369. This court has recognized that the relevant *Wooden* factors include:

- *Timing*.   Offenses committed close in time, in an uninterrupted course of conduct, will often count as part of one occasion; not so offenses separated by substantial gaps in time or significant intervening events.

- *Proximity of location*.  The further away crimes take place, the less likely they are components of the same criminal event.

- *Character and relationship of the offenses*.  The more similar or intertwined the conduct giving rise to the offenses—the more, for example, they share a common scheme or purpose—the more apt they are to compose one occasion.

*United States v. Cogdill*, 130 F.4th 523, 528 (6th Cir. 2025) (cleaned up).  Applying these factors, *Wooden* held that the defendant in that case "burglarized ten storage units on a single occasion."  595 U.S. at 370.  The ACCA sentencing enhancement for multiple occasions was therefore determined to be inapplicable.  *Id.* at 376.

Two years after *Wooden*, the Supreme Court decided *Erlinger v. United States*, 602 U.S. 821 (2024)*.*  The Court held that error occurred when the district judge, instead of a jury, decided whether the defendant's prior offenses (four burglaries of different establishments that the defendant committed over a span of several days) were committed on different occasions for ACCA purposes.  *Id.* at 826, 835.

After *Erlinger*, this court held that such an error is not structural, meaning that we must review the error to determine if it was harmless.  *See United States v. Campbell*, 122 F.4th 624, 630–31 (6th Cir. 2024).  Thoughtful jurists, including members of this court, have questioned whether *Campbell* "contravenes the Supreme Court's holding in *Erlinger*."  *See Cogdill*, 130 F.4th at 535 (Clay, J., dissenting); *see also Campbell*, 122 F.4th at 636–37 (Davis, J., concurring).  But "*Campbell* is binding precedent and now controls."  *Cogdill*, 130 F.4th at 527 (majority opinion).

We must therefore make the case-specific determination of whether the *Erlinger* error here was harmless.  To establish that the error was harmless, the government must prove "beyond a reasonable doubt—through relevant and reliable information in the record—that, absent the error, any reasonable jury would have found that [Kimbrough] committed the prior offenses on different occasions."  *See id.* at 528 (internal quotation marks omitted).

**B.    *Erlinger* harmless-error analysis**

Kimbrough does not dispute that his 2012 aggravated-burglary offense was committed on a different occasion from his other prior offenses.  Our focus is therefore on whether Kimbrough's two 2016 aggravated burglaries took place on different occasions.  Under *Wooden*, we must look at the timing, the proximity of location, and the character and relationship of these offenses.  *See Wooden*, 595 U.S. at 369.

Three of this court's published cases have applied harmless-error review to the "separate occasions" inquiry.  *See Campbell*, 122 F.4th at 631–32; *Cogdill*, 130 F.4th at 529–30;  and *United States v. Robinson*, 133 F.4th 712, 723 (6th Cir. 2025).  In *Cogdill*, the record indicated that the defendant's predicate drug-distribution offenses occurred "in the same county," but did not provide more information on their geographical proximity.  *Cogdill*, 130 F.4th  at 529.  "For all we know, Cogdill committed these methamphetamine offenses in the exact same place."  *Id.*  Nor did the record shed light on the "character and relationship of the offenses" beyond noting that both predicates involved selling methamphetamine, and that the defendant was convicted of both offenses on the same date.  *Id.*  The court noted that it was "certainly possible" that the drugs involved in the two offenses "came from the same source."  *Id.*  As to timing, the defendant's predicate offenses took place three months apart.  *Id.* at 529–30.  This court held that a reasonable jury could conclude that the defendant's predicate offenses occurred on the same occasion for ACCA purposes.  *Id.* at 530.

On the other hand, both *Campbell* and *Robinson* held that a district court's *Erlinger* error was harmless.  In *Campbell*, which preceded *Cogdill*, the government presented "overwhelming evidence" that the defendant's prior drug offenses occurred almost eight hundred miles and, in total, over six months apart.  *Campbell*, 122 F.4th at 627, 632.  Also, the record showed that the predicate distribution offenses involved the sales of different drugs.  *Id.* at 632.  Based on those facts, this court held that the government had proven beyond a reasonable doubt that a jury would have found that the predicate drug offenses occurred on different occasions.  *Id.*  Likewise, in *Robinson*, the "undisputed" proof showed that the defendant's predicate drug offenses involved different drugs and occurred nearly three years apart.  133 F.4th at 724.  And

Robinson had been punished and sentenced for the first drug offense before committing the second one. This court accordingly held that the district court's *Erlinger* error was harmless. *Id.*

Kimbrough's case is closer to *Cogdill* than to *Campbell* and *Robinson*. A jury could reasonably find that the two burglaries in 2016 were part of a single "criminal event." *See Wooden*, 595 U.S. at 369. The two burglaries took place within close proximity (roughly 2.3 miles) of each other. This close proximity increases the likelihood that the burglaries were "components of the same criminal event." *See id.* As to the "character and relationship of the offenses," a reasonable jury could find that the two 2016 burglaries were "similar or intertwined" and "share[d] a common scheme or purpose." *See id.* These facts could lead a reasonable jury to conclude that the burglaries were committed by the same individuals, using the same modus operandi—breaking into homes through windows when people were not home and driving away in the same stolen vehicle. And tellingly, Kimbrough's accomplice told the police: "Y'all have us for at least seven . . . I know."

Finally, the record is unclear as to exactly when in 2016 the two burglaries occurred. Some documents suggest that the first burglary was reported on March 17, 2016, while others state that it was committed on that date. As to the second burglary, the record shows only that it was reported on March 26, 2016, with no indication of when it was committed. Vacationers or business travelers might not immediately discover and report the burglary of their residence. *See, e.g.*, *Pittman v. State Farm Fire & Cas. Co.*, 662 F. App'x 873, 875 (11th Cir. 2016) (per curiam); *United States v. Guenther*, 470 F.3d 745, 746 (8th Cir. 2006). And even if the burglaries were committed nine days apart, that would not necessarily establish beyond a reasonable doubt that they constituted "separate occasions." To the contrary, *Erlinger* held that "no particular lapse of time . . . automatically separates a single occasion from distinct ones." 602 U.S. at 841 (citing *Wooden*, 595 U.S. at 369–70). This court, moreover, has held that "a gap in time between offenses—even one as long as three months—" does not necessarily establish that the offenses occurred on different occasions. *Cogdill*, 130 F.4th at 530.

A jury could therefore reasonably find that Kimbrough's two burglaries in 2016 were part of an "uninterrupted course of conduct," and thus "part of one occasion," despite occurring nine days apart. *See Wooden*, 595 U.S. at 369. In addition to these two burglaries, which were

reported on March 17th and March 26th, Kimbrough was accused of committing several similar offenses in the same area around the same time: a theft on March 7th, an attempted burglary on March 12th, a burglary on March 16th, and an attempted burglary on March 24th. He was arrested for all of these offenses on March 26, 2016. There were no intervening arrests or other "significant intervening events." *See id*.

Kimbrough pleaded guilty to both of the burglaries in question on the same date, and the sentences ran concurrently. *See Cogdill,* 130 F.4th at 529 (emphasizing that "[n]o one arrested Cogdill between the June offense and the September offense, and he ultimately was convicted of both offenses on the same date"). In its analysis of whether Kimbrough's burglaries occurred on different occasions, the district court itself noted that Kimbrough appeared to have been "on a spree for a while."

The government has the burden to prove beyond a reasonable doubt that a jury would find that Kimbrough's offenses occurred on different occasions. Here, the record leaves reasonable doubt about whether a rational jury, properly instructed under *Wooden* and *Erlinger*, would have found that Kimbrough committed the two 2016 burglaries in question on different occasions. *See Cogdill*, 130 F.4th at 530. A jury could reasonably find that these offenses were committed "during a single criminal episode." *Erlinger*, 602 U.S at 835. The government has therefore not satisfied its harmless-error burden.

Kimbrough's sentence was impacted by the ACCA enhancement. The district court grouped Counts One, Two, and Four together. Under the Sentencing Guidelines, Count Four— being a felon in possession of a firearm—dictated the sentencing range for the grouped counts. U.S.S.G. §§ 3D1.3(a), 2K2.1. And the statutory maximum for Count Four was 120 months of imprisonment. 18 U.S.C. § 924(a)(2) (2018). Yet the district court sentenced Kimbrough to 148 months of imprisonment on each count, to be served concurrently. Without the ACCA enhancement, the Guidelines range for this group of counts would have been 84–105 months. The ACCA enhancement thus raised the sentence for Kimbrough's felon-in-possession offense over the statutory maximum.

Sentencing on grouped Counts One and Two might also have been affected by the ACCA enhancement. When we review a sentencing error for harmlessness, our question is not whether the district court could have imposed the same total sentence without the constitutional violation. It is whether the government has shown us "with certainty" that the court would have done so. *United States v. Alvarado*, 95 F.4th 1047, 1056 (6th Cir. 2024) (citations omitted). If not, we must remand for resentencing. *Id.* The government has not met that burden here. The sentencing transcripts and the PSR contain no indication that the court would have sentenced Kimbrough to 148 months of imprisonment for Counts One and Two if not for the enhancement to Kimbrough's grouped § 922(g)(1) sentence.

Kimbrough properly preserved this argument by noting in his briefing that "[t]he ACCA drove [his] guidelines range," so "his sentence reflects the imposition of the ACCA penalty." Moreover, the parties agree that this case involved a sentencing error. This means that the government has the burden to prove that the error was harmless—Kimbrough does not have the burden to prove the opposite. *See id.* We will therefore vacate Kimbrough's sentence on Counts One, Two, and Four and remand for resentencing.

**C.      Count One's statutory maximum**

Another reason that Count One must be remanded for resentencing is that the sentence exceeded the statutory maximum for that count. The statutory maximum sentence for conspiracy to commit carjacking is 60 months. *See* 18 U.S.C. § 371. Accordingly, the PSR recommended a sentence of 60 months for Count One. But the district court sentenced Kimbrough to 148 months on Counts One, Two, and Four, to be served concurrently, which exceeded the statutory maximum sentence for Count One. The parties agree that this provides an independent reason to vacate Kimbrough's sentence for Count One and remand for resentencing.

**D.      Double jeopardy**

We now turn to Kimbrough's Double-Jeopardy argument. In his supplemental brief, Kimbrough argues for the first time that, following *Erlinger*, the Double Jeopardy Clause bars the government from seeking an ACCA enhancement based on his § 922(g)(1) offense of being a felon in possession of a firearm. Generally speaking, sentencing enhancements do not count as

additional "offenses" that create "new jeopardy." *Monge v. California*, 524 U.S. 721, 728 (1998) (citations omitted). But Kimbrough argues that, until *Erlinger*, the ACCA enhancement under 18 U.S.C. § 924(e) was just that—an enhancement—rather than a separate "offense." With *Erlinger* now the law, he contends that § 922(g)(1) is a lesser-included offense of § 924(e). If this is correct, then Kimbrough could not have made a Double-Jeopardy argument until the Supreme Court issued *Erlinger*. We do not fault Kimbrough "for failing to raise an argument before there was legitimate legal support for" it. *See Planned Parenthood Cincinnati Region v. Taft*, 444 F.3d 502, 516 (6th Cir. 2006). In sum, Kimbrough has not forfeited his Double-Jeopardy argument.

But "[l]ike the Supreme Court, we are a court of review, not first view," *Cogdill*, 130 F.4th at 532 (quoting *United States v. Houston*, 792 F.3d 663, 669 (6th Cir. 2015)). We will therefore follow *Cogdill* in leaving the merits of the Double-Jeopardy issue to the district court to address in the first instance if the government seeks an ACCA-enhanced sentence on remand. *See id.*

### III. CONCLUSION

For all the reasons set forth above, we **VACATE** Kimbrough's sentence on Counts One, Two, and Four and **REMAND** for further proceedings consistent with this opinion.

———————————————

**CONCURRENCE / DISSENT**

———————————————

CHAD A. READLER, Circuit Judge, concurring in part and dissenting in part. Can crimes committed nine days apart ever occur on the same "occasion"? Consult a dictionary definition of the term, and the answer is surely no. *See Occasion*, American Heritage Dictionary 859 (2d college ed. 1982) ("An event or happening; incident."); *Occasion*, Webster's Third New International Dictionary 1560 (1986) ("Happening, incident."). Consult the proverbial woman on the street, and the answer is assuredly the same. *See, e.g.*, *The Office: Fun Run*, NBC, pt. 1, at 16:54 (television broadcast Sept. 27, 2007) ("Intern: 'It also says you were recently bitten by a raccoon?' Meredith: 'And a rat. Separate occasions.'"). Were there any doubt on this score, consider that the crimes at issue here, in addition to being detached by more than a week, also targeted different victims, and took place miles apart. Taking all of this together, it is beyond the realm of reasonable disagreement to say that these crimes occurred on the same "occasion," as that term is used in the Armed Career Criminal Act. For these straightforward reasons, I would affirm the district court's similar assessment. I would vacate and remand only the sentence for Jermaine Kimbrough's conspiracy to commit carjacking.

I.

In ten years, Kimbrough racked up twenty-two criminal convictions. They span an array of wrongdoing—vandalism, indecent exposure, and aggravated animal cruelty, to name a few. They include various completed and attempted burglaries. And they likewise include a felon-in-possession offense, the charge underlying today's prosecution. *See* 18 U.S.C. § 922(g)(1). That latter offense has potentially serious consequence for Kimbrough: under ACCA, a defendant who is convicted of being a felon in possession of a firearm under § 922(g)(1) and who "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another," is subject to a minimum sentence of fifteen years' imprisonment. *Id.* § 924(e)(1). The district court deemed three of Kimbrough's earlier

convictions, all aggravated home burglaries (one from 2012 and two from 2016), sufficient to label Kimbrough an "armed career criminal."

A.　All agree that the 2012 aggravated burglary conviction qualifies as an ACCA predicate offense.　Kimbrough's ACCA predicate-offense count thus starts at one.　If his 2016 aggravated burglaries occurred on "occasions different from one another," *id.*, they too count as separate violent felonies for ACCA purposes, giving Kimbrough three qualifying offenses.　And if every rational jury would agree on that point, the district court's Sixth Amendment error (in not having a jury determine whether those crimes occurred on different occasions) was harmless, *see Erlinger v. United States*, 144 S. Ct. 1840 (2024); *United States v. Campbell*, 122 F.4th 624, 630–31 (6th Cir. 2024), meaning Kimbrough's sentence must be affirmed.

1.　That Kimbrough's 2016 burglaries were committed on different occasions is not a difficult conclusion to reach.　Start with the fact that the burglaries were reported nine days apart from each other.　This temporal difference alone suffices to find different occasions.　*See Wooden v. United States*, 142 S. Ct. 1063, 1071 (2022) ("In many cases, a single factor— especially of time or place—can decisively differentiate occasions."); *id.* at 1078 (Barrett, J., concurring in part and concurring in the judgment) (noting how "proximity in time and location" are "the most important indicators").　As the Supreme Court explained in *Wooden v. United States*, an occasion is an "event, occurrence, happening, or episode," in other words, a set of "activities" that, even if "temporally distinct" in some respect, are nevertheless so "proximate in time" that they form a single "episode."　*Id.* at 1069 (majority opinion).　Put another way, "temporally discrete offenses" qualify as one occasion if they are based on "acts" that either occur all "at once" (i.e., "during" the same time) or "succeed one another" (i.e., "just after" each other).　*Id.* at 1070; *see also id.* at 1078 (Barrett, J., concurring in part and concurring in the judgment) (agreeing that acts "committed sequentially," such as those in Wooden's single-evening "spree," "happen on the same 'occasion'" when they constitute "close-in-time crimes").　The Supreme Court treated the ten burglary offenses at issue there as having occurred on one occasion because the offenses took place successively, over an evening.　*Id.* at 1067 (majority opinion).　But given the inherently limited duration of an "occasion," courts "have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more

apart." *Id.* at 1071; *see also id.* at 1078–79 (Barrett, J., concurring in part and concurring in the judgment) ("Take a case involving three drug sales that occurred at 8 o'clock on three consecutive evenings at three different locations. Applying the ordinary meaning of the text seems straightforward enough: The three offenses are separate occasions because they occurred a day apart and at different locations, notwithstanding the similarity of the crimes."). A nine-day gap, it thus should be easy to see, clears that low threshold. *See United States v. Stowell*, 82 F.4th 607, 610 (8th Cir. 2023) (en banc) (deeming would-be *Erlinger* error harmless because defendant committed his offenses three days apart).

*Wooden*'s example of a wedding confirms the point. While a wedding often "encompasses multiple, temporally distinct activities," it is customarily deemed a single occasion. *Wooden*, 142 S. Ct. at 1069–70. Yet even that relatively elaborate occasion typically occurs over the course of an afternoon and evening, not nine days. By that point, the newlyweds have already enjoyed their honeymoon and returned to work. Under any fair reading of the term "occasion," in other words, the lengthy gap between Kimbrough's crimes is enough to deem those illegalities to have occurred on separate occasions.

More difficult cases may abound, especially where crimes are separated by an hour or less. Imagine, for example, a situation in which a defendant "sells drugs to the same undercover police officer twice at the same street corner one hour apart. Do the sales take place on the same occasion or different ones?" *Id.* at 1080 (Gorsuch, J., concurring in the judgment); *see also id.* ("[W]hat if our hypothetical defendant assaults one victim inside the bar and another 20 minutes later in the street outside, in part because the second victim called the police?"). Tougher to say. On the one hand, "[o]ffenses committed close in time, in an uninterrupted course of conduct, will *often* count as part of one occasion." *Id.* at 1071 (majority opinion) (emphasis added). Yet on the other, saying as much implies that, in the right (albeit rare) circumstances, even events that are "close in time" and "uninterrupted," *id.*, could break across multiple occasions. Perhaps the lapse of merely an hour or two might lead to a difficult occasions analysis, as Justice Gorsuch's separate writing theorizes. But nine days? No opinion in *Wooden* even hints that events "[]interrupted" by an over week-long hiatus could constitute a single occasion. *Id.*

If there is any lingering doubt on that score, consider two other aspects of Kimbrough's burglary offenses. One, a 2.5-mile drive (or 2.3 miles as the crow, but not Kimbrough, flies) separated the homes burglarized by Kimbrough. This too indicates that the crimes were committed on different occasions. *See, e.g.*, *United States v. Jenkins*, 770 F.3d 507, 509–10 (6th Cir. 2014) (finding different occasions for robberies committed on same day separated "by one to two miles apiece"); *United States v. Perez*, 477 F. App'x 337, 342–43 (6th Cir. 2012) (same for burglaries in a single night separated by 1.5 miles); *United States v. Elliott*, 703 F.3d 378, 387 (7th Cir. 2012) (collecting similar cases). Two, the burglaries involved unrelated victims. That reality further confirms that Kimbrough's offenses occurred on different occasions. *See, e.g.*, *Mitchell v. United States*, 43 F.4th 608, 616 (6th Cir. 2022) (finding different occasions for crimes involving "different victims"); *United States v. Hennessee*, 932 F.3d 437, 445 (6th Cir. 2019) (same); *Jenkins*, 770 F.3d at 510 (same). On this record, no "rational jury" could reach a different conclusion than that of the district court. *Neder v. United States*, 527 U.S. 1, 18 (1999); *see, e.g.*, *United States v. Brady*, 988 F.2d 664, 669 (6th Cir. 1993) (en banc) (finding different occasions because defendant "committed crimes against different victims at different places and at distinctly different times").

2. Our recent decision in *United States v. Cogdill*, 130 F.4th 523 (6th Cir. 2025), does not say otherwise. As a starting point, *Cogdill* is exceedingly difficult to reconcile with *Wooden*. *Cogdill* held that methamphetamine dealing separated by over three months could reflect the same occasion. *See id.* at 529–30. Yet in *Wooden*, every Justice took it for granted that a day's time would typically suffice for two events to have occurred on different occasions. *See, e.g.*, *Wooden*, 142 S. Ct. at 1071; *id.* at 1079 (Barrett, J., concurring in part and concurring in the judgment). Again, Justice Gorsuch, who would go on to author *Erlinger*, offered the following "hard" hypotheticals: selling drugs at the same street corner one hour apart, assaulting someone outside a bar just twenty minutes after doing the same in the premises, and assaulting a pursuing police officer after committing a robbery or burglary. *Id.* at 1080–81 (Gorsuch, J., concurring in the judgment). Drug deals a season apart land nowhere near the realm of fair debate.

To reach its unusual outcome, *Cogdill* had to rewrite the *Wooden* framework. *Wooden* emphasized that among the relevant considerations in the separate occasions analysis, "[t]iming

of course matters." *Wooden*, 142 S. Ct. at 1071. "[T]he character and relationship of the offenses," by comparison, merely "may make a difference." *Id.*; *see also id.* at 1078 (Barrett, J., concurring in part and concurring in the judgment). Yet *Cogdill* flipped these metrics, emphasizing the similarity of the defendant's predicate offenses while barely mentioning the vast temporal separation between them. *See Cogdill*, 130 F.4th at 529–30. Wholly discounting prior offenses simply because they reflect similar (or even the same) forms of misconduct distorts *Wooden* and defangs ACCA, which, remember, "is concerned with recidivism[]," *Brown v. United States*, 144 S. Ct. 1195, 1205 n.4 (2024), conduct that by definition often repeats itself. In the end, *Cogdill* transforms ACCA from a question of repetition to a question of novelty, an approach at odds not only with ACCA's text and *Wooden*, but also common sense.

Making matters worse is *Cogdill*'s consultation of a single jury verdict to validate its reading of ACCA's occasions clause. *Cogdill*, 130 F.4th at 530 (discussing *United States v. Willis*, No. 21-cr-548, 2025 WL 304623 (E.D. Mo. July 16, 2024)). As a starting point, looking to this verdict for guidance conflates a factual question—what an *actual* jury has done—with a legal one—what a *rational* jury could do. Consider, for example, how reasoning like *Cogdill*'s would affect sufficiency-of-the-evidence claims. There, we ask the criminal defendant to make a legal showing: "that no *rational* jury could have found the essential elements of [his crime] beyond a reasonable doubt." *United States v. Wheat*, 988 F.3d 299, 306 (6th Cir. 2021) (emphasis added). Yet such a claim arises only when an *actual* jury has, in fact, already made those findings. *See id.* Under *Cogdill*'s logic, the government could defeat every sufficiency challenge by simply pointing to the verdict itself as per se proof that a rational jury could convict. Put differently, *Cogdill* assumed what it set out to prove—that a jury finding like the one made in *Willis* was rational.

Equally true, in answering legal questions like this one, we typically do not elevate the factfinding of twelve laymen in Missouri over the Supreme Court's statutory interpretation. *See Wooden*, 142 S. Ct. at 1071. Nor, for that matter, do we ignore prior decisions of our own Court. On that point, it bears noting that in *Campbell*, which predated *Cogdill*, we declined to rely on that very same jury verdict, explaining that it at most reflected "only a theoretical possibility of acquittal" insufficient "to defeat demonstrated harmless error." *Id.* at 633; *see also* Appellant's

Suppl. Br. in Supp. of Pet. for Reh'g En Banc or Panel Reh'g at 13, *Campbell*, 122 F.4th 624 (No. 22-5567), ECF No. 56 (discussing *Willis* at length).  So too here.

In any event, *Cogdill* is readily distinguishable.  ACCA's "occasions" analysis is understandably fact-intensive.  *See Wooden*, 142 S. Ct. at 1070–71.  And *Cogdill* is nothing like this case.  There, the predicate offenses could have occurred "in the exact same place."  *Cogdill*, 130 F.4th at 529.  Not so here, where the length of Central Park spans the divide between Kimbrough's burglaries.  Likewise, *Cogdill* involved a potentially ongoing criminal business, namely, dealing methamphetamine.  *Id.* at 526.  Tennessee aggravated burglary, on the other hand, involves discrete conduct that terminates, at the latest, when the offender exits the burglarized habitation.  *See* Tenn. Code Ann. §§ 39-13-1002(a), 39-13-1003(a).  In the end, the "possibility" that a rational jury could unearth a ninety-five-day "occasion" in *Cogdill*, does not mean that the jury would replicate that discovery in every case involving a similar or shorter time span.  *Cogdill*, 130 F.4th at 531.  Again, *Wooden* expressly endorsed a "multi-factored" balancing test over any bright-line rules.  *Wooden*, 142 S. Ct. at 1070.

B.  In seeing the possibility that Kimbrough's crimes occurred on a single occasion, the majority opinion rests on a creative reading of the record.  It first speculates that because Kimbrough's burglaries were reported nine days apart from each other, he could have committed them within a far shorter span of time.  Maj. Op. at 6.  That is difficult to believe.  Who, after all, would not discover and immediately report the burglary of their residence?  Nor would most neighbors or passersby wait nine days to investigate a shattered window at a nearby home.  In the end, instead of "bend[ing] over backwards" to overanalyze the presentence report, as the district court properly refrained from doing, R. 118, PageID#493, we should reach the commonsense conclusion, as would a rational jury, that Kimbrough committed the burglaries nine days apart, *see* Sixth Cir. Comm. on Pattern Crim. Jury Instructions, Pattern Criminal Jury Instructions § 1.03(4) (2024 ed.) ("Possible doubt or doubts based purely on speculation are not reasonable doubts.  A reasonable doubt is a doubt based on reason and common sense.").

Doing otherwise, the majority opinion speculates that Kimbrough's victim was vacationing or on business travel at the point his home was vandalized, leading to a delay of roughly nine days in reporting the offense.  Maj. Op. at 6.  The two cases it digs up to validate

this supposition? In one, the prime theory of the burglary was that the homeowner himself participated in it to defraud his insurer. *See Pittman v. State Farm Fire & Cas. Co.*, 662 F. App'x 873, 875–77 (11th Cir. 2016) (per curiam). No wonder, then, that there may have been some discrepancy in the date of the purported break-in. And in the other, the burglar entered a rural residence by denting its backdoor while the homeowner was away for, at most, two days. Trial Tr., vol. 1, at 165, 170, 286, *Guenther v. United States*, No. 4-476 (D. Minn. June 9, 2008), ECF No. 57. Support like this gives analogy a bad name.

The majority opinion also fashions Kimbrough's two 2016 burglaries into one occasion because, to its mind, no "significant intervening events" transpired during the nine-day interlude. Maj. Op. at 6–7. I can think of many. For instance, between those crimes, Kimbrough tried to burglarize yet another residence. He also would have needed to sleep and eat—and, of course, to travel at least 2.5 miles. True, as the majority opinion notes, Kimbrough was not arrested during that duration. *Id.* at 7. Yet, happily, there is more to a defendant's life than his arrests. *See, e.g.*, *Wooden*, 142 S. Ct. at 1081 (Gorsuch, J., concurring in the judgment) (explaining how defendant's decision to burglarize each storage unit "presented a kind of intervening event"). Even then, different occasions exist when "offenses [are] separated by substantial gaps in time *or* significant intervening events." *Id.* at 1071 (majority opinion) (emphasis added). As just explained, nine days suffice for the first half of this disjunctive.

No further availing is the majority opinion's conclusion that Kimbrough's burglaries arguably reflect a "common scheme or purpose." As *Wooden* makes clear, this is the least significant factor in the ACCA analysis. *See, e.g.*, *id.* ("In many cases, a single factor—especially of time or place—can decisively differentiate occasions."); *id.* at 1078 (Barrett, J., concurring in part and concurring in the judgment) ("[T]he most important indicators of whether crimes occurred on a single 'occasion'—proximity in time and location—will matter most . . . ."). It likewise has little bearing here. Both burglaries, I recognize, feature a broken window. *See* Maj. Op. at 6. Of course, forced entry characterizes two-thirds of all Tennessee burglaries. *Property Crime 2023*, Tennessee Crime Stats, https://perma.cc/D453-K68K (last visited Apr. 7, 2025). The majority opinion next surmises (without record support) that Kimbrough left each crime in a Ford F-150. Maj. Op. at 6. Setting aside the fact that no vehicle is more common on

American roads, *see* John Seabrook, *Green Giants*, New Yorker, Jan. 31, 2022, at 41, for legal purposes it bears remembering that Tennessee burglary is complete upon *entering* a property, *see State v. Ralph*, 6 S.W.3d 251, 255 (Tenn. 1999). As a result, the presumed getaway vehicle holds no relevance to the crime's scheme or purpose.

All told, the purported intertwinement between Kimbrough's offenses rests solely on the fact that both were aggravated burglaries that "involved break-ins into homes." *United States v. Curtis*, No. 18-4907, 2024 WL 1281335, at *6 (4th Cir. Mar. 26, 2024). Yet that "is not, in and of itself, enough to constitute a common scheme or purpose." *Id.*; *see also United States v. Robinson*, 133 F.4th 712, 724–25 (6th Cir. 2025) (deeming *Erlinger* error harmless despite two predicate offenses being possession with intent to sell drugs); *United States v. Sain*, No. 22-6131, 2025 WL 801366, at *2 (6th Cir. Mar. 13, 2025) (per curiam) (same for multiple burglary predicates). Concluding as much, as does the majority opinion, disregards *Wooden*'s analysis on this point. Recall the wedding example. *Id.* at 1069–70. The "ceremony, cocktail hour, dinner, and dancing" together formed "a single event" because each had the "shared theme" of "celebrating *the* happy couple." *Id.* at 1069 (emphasis added). But suppose you attend weddings of two different couples, one at the Potter Stewart Courthouse in downtown Cincinnati, and the other a week later and two miles away, across the Ohio River at the Covington Cathedral Basilica. Would anyone say you attended those weddings on the same "occasion" just because each had the "shared theme" of "celebrating" *a* "happy couple"? *See id.* Of course not. Would that conclusion change simply because you wore the same attire to each wedding, took the same date, and called an Uber at the end of each night? Again, no. If unrelated burglaries distanced by more time and space than these two weddings qualify as the same occasion simply because they share superficial similarities, one wonders how we could ever deem an *Erlinger* error harmless. *See Krzeminski v. Perini*, 614 F.2d 121, 125 (6th Cir. 1980) (Keith, J.) (noting how the possibility of "an irrational jury" does not suffice to deem an error harmful).

\*       \*       \*

Stepping back, it bears reminding that "the term [occasion] in ACCA has just its ordinary meaning," so much so that "most cases should involve no extra-ordinary work." *Wooden*, 142 S. Ct. at 1071. In that respect, the nine-day gap between Kimbrough's offenses against unrelated

victims 2.5 miles apart makes the occasions analysis here about as straightforward as it comes. Tellingly, it takes a heavy lift to reach the majority opinion's contrary conclusion. Doing so renders an easy case oddly difficult and, in the end, wrong.

All of this makes one wonder whether the majority opinion, at bottom, simply rejects our binding decision in *Campbell* without expressly saying so. That may explain why the majority opinion goes out of its way to praise the "[t]houghtful jurists" who have previously questioned *Campbell*'s holding that *Erlinger* errors are not structural. Maj. Op. at 4. Of course, those thoughtful jurists, at least in this Circuit, amount to just one. *See Cogdill*, 130 F.4th at 532 (Clay, J., dissenting). The other cited jurist, it bears noting, "agree[d] with and join[ed] the [*Campbell*] majority's opinion," concurring separately simply to address the scope of what can be considered for the harmlessness analysis. *Campbell*, 122 F.4th at 635 (Davis, J., concurring). And more broadly, every circuit to consider the issue has likewise agreed with *Campbell*'s plain reading of Supreme Court precedent. *See United States v. Saunders*, No. 23-6735, 2024 WL 4533359, at *2 (2d Cir. Oct. 21, 2024) (reviewing, unanimously, *Erlinger* error for harmlessness); *United States v. Brown*, --- F.4th ----, No. 21-4253, 2025 WL 1232493, at *5 (4th Cir. Apr. 29, 2025) (same); *United States v. Butler*, 122 F.4th 584, 589 (5th Cir. 2024) (same); *United States v. Johnson*, 114 F.4th 913, 917 (7th Cir. 2024) (same); *United States v. Robinson*, No. 23-3438, 2024 WL 4448849, at *1 (8th Cir. Oct. 8, 2024) (per curiam) (same); *United States v. Rivers*, 134 F.4th 1292, 1305–06 (11th Cir. 2025) (same); *see also United States v. Trahan*, 111 F.4th 185, 197–98 (1st Cir. 2024) (reviewing *Alleyne* challenge for harmlessness while favorably citing calls from four Justices to apply such review to *Erlinger* errors). If the majority opinion is quietly siding with our thoughtful colleague by functionally making all *Erlinger* errors nonharmless, it is joining the deep minority in this split of opinion.

II.

The majority opinion's path here is all the more puzzling when one considers that it enjoyed another route to deeming the *Erlinger* error harmless. Recall, Kimbrough received a concurrent 148-month sentence for carjacking. That sentence falls within the crime's statutory maximum, *see* 18 U.S.C. § 2119(1) (15 years), and it was not subject to ACCA's statutory minimum. It follows that had the district court never applied § 924(e)(1), Kimbrough would still

be serving a 232-month prison sentence:  148 months for carjacking, followed by 84 months for using, carrying, and brandishing a firearm during and in relation to a crime of violence.  Because § 924(e)(1) thus "d[id] not add any length to the overall terms of imprisonment," the *Erlinger* error did "not affect [Kimbrough's] substantial rights," and "is therefore harmless."  *United States v. Burns*, 298 F.3d 523, 544–45 (6th Cir. 2002).

To sidestep this obvious result, the majority opinion deems the carjacking sentence tainted alongside the felon-in-possession sentence and vacates both.  *See* Maj. Op. at 7–8.  At the outset, it is difficult to see how a sentence for Kimbrough's § 2119(1) conviction—148 months' imprisonment—was somehow affected by ACCA, which, if applicable, requires at least 180 months' imprisonment.  Yet the majority opinion persists.  It begins by noting how the sentence for Kimbrough's felon-in-possession offense, absent the ACCA enhancement, exceeded its then-applicable statutory maximum.  *Id.* at 7.  This argument, I note, is wholly absent from Kimbrough's briefing.  *See Operating Eng'rs Loc. 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1057 (6th Cir. 2015) ("[I]t is not our function to craft an appellant's arguments." (citation omitted)).  And it is entirely beside the point.  The statutory maximum for Kimbrough's substantive carjacking was fifteen years at the time of the crime's commission, *see* 18 U.S.C. § 2119(1), and his 148-month sentence sits comfortably under that ceiling.  How the statutory maximum for one crime somehow influenced the sentence or statutory maximum for another crime is left unsaid.

The district court, I acknowledge, did group Kimbrough's carjacking and felon-in-possession offenses together for sentencing purposes, meaning his § 2119(1) sentence partly derived from an advisory enhancement under the Sentencing Guidelines for his armed career criminal classification.  *See* U.S. Sent'g Guidelines Manual § 4B1.4(a) (U.S. Sent'g Comm'n 2024).  Yet that makes little difference, in multiple respects.

One, Kimbrough does not seem to have challenged the district court's application of the Guidelines; his briefing instead focuses on the statutory minimum in § 924(e)(1).  Confirming as much, the majority opinion points to a lone sentence in Kimbrough's second supplemental brief.  Maj. Op. at 8.  Of course, arguments raised for the first time in supplemental briefing—let alone a second one—are forfeited.  *See United States v. Walker*, 615 F.3d 728, 734 (6th Cir. 2010).

Nor do we ordinarily craft arguments on a litigant's behalf regarding "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *United States v. Smith*, 749 F.3d 465, 489 (6th Cir. 2014) (quotation omitted). No further availing is the assurance that "the parties agree that this case involved a sentencing error." Maj. Op. at 8. The government has conceded error only as to the sentence for Kimbrough's conspiracy to commit carjacking—not for his substantive carjacking sentence. We need not throw out all of a defendant's multiple sentences upon noticing an error in just one of them. *See, e.g.*, *United States v. Gray*, 521 F.3d 514, 544 (6th Cir. 2008); *United States v. Wettstain*, 618 F.3d 577, 593 (6th Cir. 2010).

Two, *Erlinger* did not concern the armed career criminal enhancement in the Sentencing Guidelines. That fact is notable, as *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its related errors apply only to statutory minimums and maximums, not judicial factfinding under the advisory Sentencing Guidelines. *E.g.*, *United States v. Osborne*, 545 F.3d 440, 445 (6th Cir. 2008) ("[A] district court may make findings of fact in order to calculate a sentence under the advisory Sentencing Guidelines."); *United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014) ("*Alleyne* [*v. United States*, 570 U.S. 99 (2013),] dealt with judge-found facts that raised the mandatory minimum under a statute, not judge-found facts that trigger an increased guidelines range . . . ."); *see also Erlinger*, 144 S. Ct. at 1852 ("Really, this case is as nearly on all fours with *Apprendi* and *Alleyne* as any we might imagine."). In the end, the sole constitutional error in *Erlinger*—application of the fifteen-year minimum in § 924(e)(1) without a jury—did not affect Kimbrough's carjacking sentence.

III.

The majority opinion's treatment of Kimbrough's Double Jeopardy Clause claim is similarly problematic. As the majority opinion acknowledges, Kimbrough made this argument "for the first time" in his supplemental briefing. Maj. Op. at 8. He thus forfeited the point by not raising it in his merits brief. *See, e.g.*, *Walker*, 615 F.3d at 734.

Yet here again the majority opinion opts to forgo longstanding party presentation principles and instead reserves this forfeited issue for first review on remand. Maj. Op. at 8–9.

To do so, it reasons that Kimbrough should not be faulted for failing to make his Double Jeopardy Clause challenge before the Supreme Court decided *Erlinger*, as that intervening case purportedly sheds light on whether § 924(e)(1) is merely a sentencing enhancement or, instead, a greater offense of § 922(g). *Id.* at 9. But *Erlinger* never spoke to this issue. Tellingly, neither the majority opinion nor Kimbrough offer a single citation to *Erlinger* on the point. *Id.*; Appellant's First Suppl. Br. 26. At any rate, when there has been an intervening change in law, we may exercise discretion to reach forfeited issues "only if the issue was not previously available." *S.C. v. Metro. Gov't of Nashville*, 86 F.4th 707, 718 (6th Cir. 2023) (quotations and citation omitted). Kimbrough falls well short of this standard. Remember, he dedicated nearly twenty pages of his principal brief, submitted pre-*Erlinger*, to arguing that the Sixth Amendment requires a jury to answer ACCA's occasions question. Appellant Principal Br. 15–34. At that juncture, he could have easily raised the Double Jeopardy Clause challenge presented here—especially if, as Kimbrough suggests, this newfound challenge stems from the same reasons underpinning the threshold jury requirement.

All of this has already been explained in our recent, on-point decision in *United States v. Sain*, 2025 WL 801366. There, the defendant—in his reply brief—raised an identical Double Jeopardy Clause challenge against the district court's post-plea use of the armed career criminal enhancement. *Id.* at *1–2. Understandably, the panel did not bite. "There appears to be no reason why Defendant could not have made this argument earlier. This argument is not based on any legal changes stemming from *Erlinger*, nor does it rely on any other recent developments. . . . Defendant has not, therefore, preserved this issue for appeal." *Id.* at *2. The panel then affirmed the defendant's sentence. *Id.* at *3. The majority opinion should take heed. After all, not only does Kimbrough stand in an identical posture, but his briefing on the issue virtually matches that in *Sain*. *Compare* Appellant's First Suppl. Br. 26–28 ("If any doubt remains about the fundamental nature of the error here and its proper remedy[] . . . ."), *with* Reply Br. of Appellant at 28–31, *Sain*, No. 22-6131 (6th Cir. Mar. 13, 2025), 2024 WL 4170148, at *28–31, ECF No. 39 ("If any doubt remains about the fundamental nature of the error here and its proper remedy[] . . . .").

Here too, *Cogdill* is a poor guide.  To be sure, Cogdill asserted an identical Double Jeopardy Clause challenge, which the panel there, as here, reserved for initial consideration on remand.  *Cogdill*, 130 F.4th at 523.  But *Cogdill*, I note, did so without explaining why it ignored our settled forfeiture doctrine.  *See id.*  It is thus no surprise that *Sain* did not even address its seeming inconsistency with *Cogdill*.  Like *Sain*, I would apply our normal forfeiture doctrine—one that long-predates *Cogdill*.

Either way, the eventual outcome is the same.  Assuming Kimbrough raises his Double Jeopardy Clause challenge on remand, the government can simply respond that it has been forfeited.  Again, Kimbrough "could have raised his argument[]" earlier "but failed to do so, and, therefore, [forfeited] his right to raise the[] issue[] before the district court on remand or before this court on appeal after remand."  *United States v. Adesida*, 129 F.3d 846, 849–50 (6th Cir. 1997).  At day's end, neither the district court nor this Court need reach the merits of the Double Jeopardy Clause challenge.

\*          \*          \*          \*          \*

Setting aside these many disagreements, I agree with the majority opinion that we must vacate and remand the sentence for Kimbrough's conspiracy to commit carjacking.  *See* Maj. Op. at 8.  That sentence exceeded the five-year statutory maximum in 18 U.S.C. § 371, and the government does not oppose us remanding it for resentencing.